[No. 2,420.]

## MICHAEL O'CONNOR *v.* WILLIAM KELLY.

LANDLORD AND TENANT.—If the landlord sells and conveys the leased premises, and assigns the lease, the grantee must inform the tenant of the sale before demanding rent, and if the tenant refuse to pay rent to the grantee, when he does not know of the sale the refusal is not a forfeiture of the lease.

EJECTMENT AGAINST TENANT.—The grantee cannot maintain ejectment against the tenant of the landlord, because the tenant has refused to pay him rent, unless the tenant had been informed of the sale, before rent was demanded.

DEMAND FOR RENT.—A demand for rent should be of the amount due. If the amount due is not demanded a refusal to pay does not work a forfeiture of the lease.

APPEAL from the District Court of the Fourth Judicial District, City and County of San Francisco.

The lease from Murphy to Kelly was dated August 25th, 1863, and was for a tract of land in San Francisco. Suit was brought before the termination of the lease, to wit: April 17th, 1868. The lease was not recorded. The deed from Murphy to O'Connor was dated April 16th, 1867, and was not recorded. The plaintiff recovered judgment in the Court below, and the defendant appealed from the judgment and from an order denying a new trial.

The other facts are stated in the opinion of the Court.

*M. G. Cobb*, for Appellant.

O'Connor having thus shown the relation of landlord and tenant between himself and Kelly, he was bound to prove that that relation had ceased—that Kelly had become a trespasser—in order to maintain his action. The demand for rent was not sufficient to make a refusal to pay work a forfeiture. Taylor on Landlord and Tenant (Sec. 493) states the common law rule thus: "In every case, before a landlord could enter for the non-payment of rent he must have

made a formal demand for the precise rent due for the last current quarter; and if the demand includes any portion of the rent of a previous quarter, it would have been bad. Kelly did not renounce his character of tenant either by setting up title in another or claiming title in himself. (*Doe ex dem Williams* v. *Cooper*, 1 M. & G. 139 [39 E. C. L. R. 608].

*G. F. & W. H. Sharp*, for Respondent. .

If Kelly's refusal to pay rent was innocent, it behooved him to ascertain the true state of facts and then come into Court with a tender of his rent, thereby possibly averting the forfeiture, as was done in the case of *Atkins* v. *Chilson*, 11 Met. 112. (*Sampson* v. *Schaeffer*, 3 Cal. 203.) The law defines a disclaimer as any act of the lessee by which he disaffirms or impugns the title of his lessor. (1 Washburne on R. P. 362, and cases therein cited.) And, in consequence of such disclaimer, the lessee forfeits his estate, and the lessor may enter or bring ejectment or forcible detainer. (1 Washburne on R. P. 362, and cases therein cited; Wall & Goodenough, 5 Ill. 415.)

The fact that the lessee was ignorant of his lessor's title is a circumstance which, while it does not prevent the forfeiture from attaching, might, if coupled with mistake or accident, be a ground for relief; but here the defendant, instead of making any such defense, and in entire harmony with his previous actions, comes into Court and contests our title, to the last extremity.

In 9 Carrington & Payne, 773 (38 E. C. L. R. 331), *Doe ex dem. Bennett* v. *Long*, the reply of a tenant to a demand for rent, "You are not my landlord—I am not your tenant," was held to be a disclaimer, and ejectment would lie without notice to quit. (See, also, *Doc ex dem. Grubb* v. *Grubb*, 10 Barn. & Cress. 816; *Calvert* v. *Frowd*, 4 Bing. 557.)

Opinion of the Court—Temple, J.

By the Court, TEMPLE, J.:

The defendant was the tenant of one Murphy, from whom he had a lease of the premises sought to be recovered in this action for the term of five years, paying a rent of six dollars per annum. Before the expiration of the lease, Murphy conveyed to plaintiff, who sent his clerk to defendant to demand the payment of rent, which being refused, this action was commenced, being ejectment.

It does not appear that the defendant had notice of the conveyance of the premises to the plaintiff, or that, at the time he refused to pay rent, he had any knowledge of that fact whatever. From the evidence of Ryan, through whom the demand was made, the contrary is to be inferred.

By the terms of the lease, Murphy could put an end to the term before the expiration of five years, upon the payment of a certain sum of money to Kelly. The lease, also, contained the usual covenant for a forfeiture in case of non-payment of rent. Demand was not made for any particular sum, nor was there any other refusal than a statement that he did not acknowledge O'Connor in the matter, and did not wish to pay rent to him. In fact, he did not know him. He was not informed of the conveyance to O'Connor, nor did he deny the tenancy or set up any claim in himself. He did just what any tenant ought to do when called upon to acknowledge the title of a stranger and pay rent to him. If leases could be forfeited by making a secret assignment of the lease and demand made by the assignee, without making known the fact of assignment, no tenant would ever be safe. By doing just what appears to be his duty to his landlord he might forfeit his estate.

The failure to make demand of the amount due was also fatal to the plaintiff's case. (*Gage* v. *Bates*, 40 Cal. 384.)

Judgment reversed and cause remanded for further proceedings.